UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| BETTY SCALLY, Independent Executor of the Estate of John Scally, deceased,<br><br>  Plaintiff,<br><br>  v.<br><br>VETERANS ADMINISTRATION and THE UNITED STATES OF AMERICA,<br><br>  Defendants. | Case No. 03-cv-4208-JPG |

**MEMORANDUM AND ORDER**

This matter comes before the Court on the motion for summary judgment filed by the defendants Veterans Administration ("VA") and the United States of America (collectively referred to as "Defendants") (Doc. 21). The plaintiff, Betty Scally ("Scally"), has responded (Doc. 27), and the Defendants have replied to Scally's response (Doc. 31).

**III.     Standard**

Summary judgment is only proper where there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). In deciding a motion for summary judgment, the Court views all evidence in the light most favorable to the nonmoving party and draws all reasonable inferences in the nonmovant's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). When "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," a genuine issue of material fact exists and summary judgment will be denied. *Id.* at 248. Finally, summary judgment may also be granted as a matter of law if the nonmovant lacks sufficient evidence to prove an essential element of its case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

II.     Facts

Viewing all the evidence in the light most favorable to Scally and drawing all reasonable inferences in her favor, the Court finds that the evidence reveals the following facts.

Scally is the executor of the estate of her husband, John Scally ("John"), the decedent. For many years prior to John's death, he suffered from back pain, which became progressively worse towards the end of his life. John also had a significant medical history, including cardiac problems, obesity, congestive heart failure, hypercholesterolemia, hypertension, and other problems. On January 19, 2001, Dr. Mellion, an independent neurosurgeon in private practice, proposed that John may be a candidate for back surgery. Dr. Mellion referred John back to his primary care physician, Dr. Nagpal, for the pre-surgery clearance examination. On February 21, 2001, Dr. Nagpal and Dr. Panchuamukhi, John's cardiologist, evaluated John in preparation for back surgery to be performed by Dr. Mellion. Drs. Nagpal and Panchuamukhi were employed by the VA, an agency of the United States of America.

The purpose of the examination was to assess John's risks and advise the surgeon as to the risks involved with the surgery. The initial note of the February 21st visit, captioned "PRE-OP CLEARANCE" reveals that through the pre-surgery examination, Dr. Nagpal ultimately cleared John for surgery.

As part of the pre-surgery clearance examination, Dr. Nagpal consulted with Dr. Panchuamukhi in her assessment of the risks. Dr. Nagpal adopted Dr. Panchuamukhi's characterization that John was at moderate risk for surgery despite numerous risk factors related to his medical history. Dr. Nagpal provided this assessment to Dr. Mellion, who then discussed the risks with John and his wife. Relying on Dr. Nagpal's findings, John agreed to the surgery. Had John known he was at a higher risk, he would not have consented to the surgery. On March

8, 2001, John was admitted to Carbondale hospital to undergo surgery. After surgery, the post-operative care staff did not follow the VA physician's recommendations to carefully monitor John's fluid intakes. As a result, an excessive fluid surplus developed. Approximately twelve hours after surgery, Scally died, the cause of which is consistent with a heart attack.

In the opinion of Scally's expert, Dr. Klapper, the VA doctors breached the standard of care by failing to appropriately classify John's risk in light of new problems John was experiencing before surgery, namely, a larger defect on his nuclear scan implying more heart muscle or myocardium and new symptoms of chest pains. Both of these conditions placed him at a higher than moderate risk for surgery. Additionally, Dr. Klapper asserts the VA doctors breached the standard of care by failing to properly advise Dr. Mellion as to the risks, as it was beyond Dr. Mellion's expertise as a surgeon to understand the significance of John's risk. Dr. Klapper's affidavit stated that based on his extensive education, training and experience, he was familiar with the standard of care for a cardiovascular specialist in Illinois and is knowledgeable regarding the standard of care for physicians involved with pre-operative clearance of cardiac patients for surgery.

**III.    Procedural History**

Scally filed an administrative claim with the VA on March 9, 2001. After the VA denied her claim, Scally filed a three-count complaint with this Court on December 1, 2003 alleging that Drs. Panchuamukhi and Nagpal were negligent in clearing John for surgery. The complaint was brought pursuant to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b) & 2671 *et seq*. Count I of her complaint alleged a claim based on 755 Ill. Comp. Stat. 5/27-6, the Survival Act; Count II alleges a claim based on 740 Ill. Comp. Stat. 180/1 *et seq.*, the Wrongful Death Act; and Count III alleges a claim based on 750 Ill. Comp. Stat. 65/15, the Family Expense Act. The

Defendants filed this motion for summary judgment on March 11, 2005. Since that filing, the Court has dismissed Count I of Scally's complaint.

The Defendants argue that Scally cannot prove each element of her case. Defendants assert Scally has not proven the applicable standard of care, breach of that standard, or proximate cause. In the alternative, the Defendants assert there has been no negligent failure to recognize John's risk for surgery, nor was John harmed as a result of the Defendants' examination.

## IV.   Analysis

The Court finds that Scally can sufficiently prove each of the elements of her cause of action, and when viewing the evidence in the light most favorable to Scally, a reasonable jury could find in her favor.

Scally's complaint alleging wrongful death pursuant to the FTCA asserts negligence on part of the VA doctors. This type of negligence is commonly referred to as medical malpractice. In a medical malpractice case, the plaintiff must prove (1) the proper standard of care from which to measure the defendant physician's conduct, (2) the physician's negligent failure to comply with that standard, and (3) an injury proximately caused by the physician's breach of the standard. *Walski v. Tiesenga*, 381 N.E.2d 279, 282 (Ill. 1978). The general rule is that the physician is required to possess and apply the same degree of knowledge, skill and care that a reasonably well-qualified physician would apply under similar circumstances. *Purtill v. Hess*, 489 N.E.2d 867, 872 (Ill. 1986). The standard of care, with certain exceptions, must be established through expert testimony. *Walski*, 381 N.E.2d at 282. An expert is qualified to testify on the issue if he "is familiar with the standards of care applicable to the conditions and facilities available to the defendant doctor." *Purtill*, 489 N.E.2d at 874. However, when uniform standards exist, regardless of the locality, the expert will not be disqualified for a lack of

familiarity with the practice in a particular locality. *Id.* at 874-875.  In light of the foregoing rules of law, the Court finds that Scally has presented evidence about the standard of care, breach of the standard, and proximate cause from which a reasonable fact-finder could conclude that the Defendants were negligent.

A.   Standard of Care

In the case at bar, Defendants first argue that Scally has not established the applicable standard of care because Dr. Klapper did not explicitly define the standard.  However, a plaintiff does not have to introduce expert opinion about the standard of care totally separate from testimony regarding breach of that standard.  *Chambers v. Ingram*, 858 F.2d 351, 356 (7th Cir. 1988).  "'All that is necessary for the expert to establish is that there was a generally accepted medical standard of care or skill *which entailed treatment or performance of a procedure in a manner different than that provided by the defendant.*'" *Id.* at 357 (citing *Chamness v. Odum*, 399 N.E.2d 238, 246 (Ill. App. Ct. 1979)).  In *Chambers*, the expert opined that the failure of plaintiff's psychologist to inform the plaintiff's psychiatrist about the plaintiff's mental condition was a deviation from the standard of care.  *Id.*  The Seventh Circuit Court of Appeals stated that when read in context, the expert's general averment established the standard of care to provide accurate information regarding the patient's mental condition.  *Id.*

In the present case, Dr. Klapper's affidavit and deposition testimony establish that Dr. Panchuamukhi deviated from the standard of care by failing to properly classify John's risk based on numerous factors pointed out in the affidavit and in the deposition testimony and by failing to properly advise Dr. Mellion as to John's risk so that surgery could be canceled.  Read in context, these averments establish a generally accepted standard of care which entails treatment in a manner different than that provided by VA's physician, Dr. Panchuamukhi.

5

Specifically, it establishes the standard of care to properly classify a patient's risk based on certain factors and the standard of care to advise the surgeon as to the patient's correct level of risk. Consistent with *Chambers*, this Court finds Dr. Klapper has sufficiently defined the standard of care.

Next, Defendants argue that Scally has not established the applicable standard of care because Dr. Klapper lacks knowledge regarding the standard in the same or similar locality as Marion, Illinois, and is not qualified to render an opinion on the VA physician's alleged deviation from the standard. Under the locality rule, a physician is required "to possess and to apply that degree of knowledge, skill, and care which a reasonably well-qualified physician in the same or similar community would bring to a similar case under similar circumstances." *Purtill*, 489 N.E.2d at 872. The locality rule should not be narrowed any further than necessary. *Chamness,* 399 N.E.2d at 246. In *Chamness*, the court allowed the plaintiff's expert, who was a chiropractor in St. Louis's greater metropolitan area, to testify to the standard of care in Anna-Jonesboro, a small southern Illinois area. *Id.* Similarly, in *Hansbrough v. Kosyak*, 490 N.E.2d 181, 186 (Ill. App. Ct. 1986), the plaintiff's expert stated he was familiar with the standard of care in Illinois. Because the expert was familiar with the standard of care in Illinois generally, the court found that it did not matter that he currently practiced in the Chicago area and was rendering an opinion as to the standards in the smaller town of Hoopeston, Illinois. *Id.* The court found the expert's affidavit was sufficient to raise a genuine issue of material fact to survive the summary judgment motion. *Id.* at 186-187.

Dr. Klapper's affidavit states he is familiar with the standard of care for a cardiovascular specialist in the State of Illinois and that he is knowledgeable regarding the standard of care for physicians involved in the pre-operative clearance of cardiac patients for surgery. The Court

6

finds these statements, along with Dr. Klapper's extensive experience in pre-operative clearance exams, establish his familiarity with the standard of care sufficient to raise an issue of fact in regards to Defendants' motion for summary judgment. It does not matter whether Dr. Klapper has only had experience in the larger metropolitan areas; it is enough that he is at least familiar with the standard of care in Illinois generally.

B.      Breach of the Standard of Care

Defendants next argue that Scally has not established a breach of the standard of care. Dr. Klapper's affidavit, which states that Dr. Panchuamukhi did not meet the standard of care with respect to cardiovascular practice because John was at a higher risk category than was diagnosed and because he misadvised the surgeon of the risks, are sufficient to establish a genuine issue of material fact to survive the summary judgment motion. Viewed in the light most favorable to Scally, Dr. Panchuamukhi breached the applicable standard of care with respect to cardiovascular practice by failing to properly classify John's risk and failing to properly advise Dr. Mellion of his risk so that surgery could be cancelled.

C.      Proximate Cause

Finally, Defendants argue that there was no proximate cause. Under Illinois law, proximate cause is made up of (1) cause in fact and (2) legal cause. *First Springfield Bank & Trust v. Galman*, 720 N.E.2d 1068 (Ill. 1999). If the negligence was "a material element and substantial factor in bringing about the injury," then cause in fact is established. *Palay v. United States*, 349 F.3d 418, 432 (7th Cir. 2003) (quoting *First Springfield Bank & Trust*, 720 N.E.2d at 1072). Legal cause is established if the injury is one that a reasonable person would view as the likely result of his conduct. *Id.* Finally, proximate cause is usually a question for the fact-finder

to decide: "[O]nly rarely are the facts so clear that the court can resolve the issue as a matter of law." *Id.* at 432-433.

Proximate cause is disputed in the present case. Defendants argue that both the anesthesiologist and the surgeon knew of the high risk before performing the operation, so even if the VA physicians were negligent in their assessment, there was no proximate cause. Defendants also argue that John's death is not a foreseeable result of the VA physician's assessment. Instead, the Defendants argue that John's death resulted from the post-operative care, which was contrary to the Defendants' recommendations that the post-operative staff closely monitor John's fluid level. It is the Defendants' position that the post-operative care which deviated from the Defendants' recommendations caused John's death by a fluid overdose.

The evidence, however, when viewed in Scally's favor, establishes that John would not have undergone the surgery had he been fully informed of his high risk as opposed to moderate risk. Additionally, the evidence shows that the VA physicians misadvised Dr. Mellion as to John's risk, and thus, he did not cancel surgery. Even if the surgeon and anesthesiologist had known John was classified as a high risk, Dr. Klapper has demonstrated that the VA physician's did not properly advise Dr. Mellion of the nature of the risk. Because John's cardiovascular risks were beyond Dr. Mellion's expertise, without the proper advise, Dr. Mellion did not fully appreciate the high risk classification and failed to cancel the surgery. Scally has presented sufficient evidence that the VA physician's failure to properly classify and advise the surgeon of John's high risk could be a material element and substantial factor in bringing about John's death. Had his risk been properly categorized and had Dr. Mellion been properly advised, Dr. Mellion could have more fully informed John of the risks, surgery would have been cancelled (either by John, Dr. Mellion, or the VA physicians), and John's death would not have occurred.

Scally has also established legal cause. A reasonable person could view John's death as a likely consequence of the VA physician's improper classification of John's risks and improperly advising Dr. Mellion of John's risks. Drawing all reasonable inferences in Scally's favor, a reasonable fact-finder could find that the negligence of the VA physicians proximately caused Scally's death.

Thus, the Court finds that each of the elements of Scally's cause of action contains disputed material facts. Drawing all reasonable inferences in Scally's favor, the Court finds that a jury could return a verdict for Scally. Additionally, Scally has presented sufficient evidence to prove each essential element of her case, so Defendants are not entitled to judgment as a matter of law. Consequently, the Court must deny Defendants' motion for summary judgment.

V.   **Conclusion**

For the foregoing reasons, the Defendants' motion for summary judgment (Doc. 21) is **DENIED**.

**IT IS SO ORDERED.**
**DATED: July 26, 2005**

> s/ J. Phil Gilbert
> **J. PHIL GILBERT**
> **DISTRICT JUDGE**